(March 29, 1913.)

NELLIE W. COE, Respondent, v. PHIL McGRAN, Appellant.

[131 Pac. 1110.]

WANT OF CONSIDERATION—SUFFICIENCY OF EVIDENCE—UNDUE INFLUENCE.

1. Evidence examined, and *held* sufficient to support the verdict and judgment.

2. Where it appears that C., in whose favor a check was executed, performed services in caring for G., who executed the check, and in taking him into her home, which she would not have performed except for promise made by G. that he would either buy C. a farm or compensate her by money consideration, *held* that a consideration is shown for the execution and delivery of a check from G. to C., on which action is subsequently brought.

3. Preference and goodwill from one toward another, growing out of kindnesses and attentions paid an aged person, are not sufficient to show undue influence, in the absence of proof of imposition or fraud practiced by the one upon the other.

(Sullivan, J., dissents.)

APPEAL from the District Court of the Third Judicial District for Ada County. Hon. Charles P. McCarthy, Judge.

Action for debt. Judgment for plaintiff. Defendant appealed. *Affirmed.*

Ira E. Barber, for Appellant.

Any relation which gives rise to confidence, though not a badge of fraud, which may arise from other circumstances, holds the parties to a fuller and stricter proof of the fairness of the transaction, and may in some cases be deemed conclusive evidence of fraud. (Bump, Fraudulent Conveyances, 3d ed., 59; Eaton & Gilbert, Com. Paper, p. 279, 79 Cyc. 463.)

The confidential relations of the parties to this action were such that a voluntary delivery to plaintiff of this large check in consideration of future support, without reservation or written agreement guaranteeing such support, was improvident and void by reason of the confidential relationship importing. undue influence. (*White v. Daly* (N. J.), 58 Atl. 929; *Potter v. Woodruff*, 92 Mich. 8, 52 N. W. 83.)

When parties are nearly related, proof of the fairness of the transaction is required to be more clear and convincing than when they are strangers. (*Lehman etc. Co. v. Greenhut*, 88 Ala. 478, 7 So. 299; *Thomas v. Beck*, 39 Conn. 241; *English v. Porter*, 109 Ill. 285; *Schroeder v. Walsh*, 120 Ill. 403, 11 N. E. 70; *Burton v. Boyd*, 7 Kan. 18.)

In the relationship of these parties the burden is on the beneficiary to show the transaction is absolutely fair, adequate and equitable. (*Street v. Goss*, 62 Mo. 226; *Gibson v. Hill*, 23 Tex. 77; *Ray v. Lawrence*, 38 Ky. (7 Dana) 78; *Schwartz v. Gerhardt*, 44 Or. 425, 75 Pac. 700.)

When a benefit is obtained without consideration from one not in possession of his mental faculties, the transaction is void. (*Valentine v. Lunt*, 51 Hun, 544, 3 N. Y. Supp. 906.)

Such transactions will not be upheld. (*Goodyear v. Adams*, 52 Hun, 612, 5 N. Y. Supp. 275, approved 119 N. Y. 650, 23 N. E. 1149; *Becker v. Schwerdtle*, 141 Cal. 386, 74 Pac. 1029.)

A promise to make a gift lacks a consideration, and is unenforceable. A promise to pay money when there is no legal obligation to pay and no other consideration is not enforceable.

A promise founded only on a good consideration is gratuitous and unenforceable. (*Peck v. Brummagim*, 31 Cal. 440,

89 Am. Dec. 195; *Williams v. Forbes,* 114 Ill. 167, 28 N. E. 463; *Warren v. Durfee,* 126 Mass. 338; *Jackson v. Twenty-third St. Ry. Co.,* 88 N. Y. 520; *In re Crawford's Appeal,* 61 Pa. St. 52, 100 Am. Dec. 609; *Clark v. Jones,* 85 Ala. 127, 4 So. 771; *Oullahan v. Baldwin,* 100 Cal. 648, 35 Pac. 310; *Fink v. Cox,* 18 Johns. (N. Y.) 145, 9 Am. Dec. 191; *Brooks v. Owens,* 112 Mo. 251, 19 S. W. 723, 20 S. W. 492, and other cases cited.    9 Cyc. 316, et seq.)

In such cases the burden of proof shifts to the beneficiary, and requires a showing that the transaction was absolutely fair and the consideration adequate.    (*Baughes v. Buckles,* 2 Ohio Cir. 498; *Winter v. Nobs,* 19 Ida. 18, Ann. Cas. 1912C, 302, 112 Pac. 525; *Vaughan v. Johnston,* 20 Ida. 669, 119 Pac. 879, 37 L. R. A., N. S., 816; *Adee v. Hallett,* 3 App. Div. 308, 38 N. Y. Supp. 273; *Derrick v. Emmons,* 14 N. Y. Supp. 360.)

A promise to pay, where there is no legal obligation, is not binding.    (*Waterloo etc. Co. v. Cole,* 51 Cal. 381; *Martin v. Stubbings,* 20 Ill. App. 381; *Lyon v. Williams,* 71 Mass. 557; *Logan v. Mathews,* 6 Pa. 417; *Houser v. Hobart,* 22 Ida. 735, 127 Pac. 1000; *Steele v. Sanchez,* 80 Iowa, 507, 45 N. W. 870; *Tulane v. Clifton,* 47 N. J. Eq. 351, 20 Atl. 1086.)

While weakness of mind alone will not avoid a contract, when combined with inadequacy of consideration, it will be sufficient to show the influence exercised over the party was undue.    (*Worthington v. Major,* 94 Mich. 325, 54 N. W. 303; *Kroenung v. Goehri,* 112 Mo. 641, 20 S. W. 661; *Konrad v. Zimmermann,* 79 Wis. 306, 48 N. W. 368.)

If the party who reposes trust and confidence in the other is afflicted with weakness, either physical or mental, such fact greatly strengthens the presumption of undue influence arising out of confidential relations.    (*Ashmead v. Reynolds,* 134 Ind. 139, 39 Am. St. 238, 33 N. E. 763; *Woodbury v. Woodbury,* 141 Mass. 329, 55 Am. Rep. 479, 5 N. E. 275; *Martin v. Baker,* 135 Mo. 495, 36 S. W. 369; *Lewis v. McGrath,* 191 Ill. 401, 61 N. E. 135; *Dorsey v. Wolcott,* 173 Ill. 539, 50 N. E. 1015; *Gibbins v. Gibbins,* 175 Pa. 475, 34 Atl. 846.)

Between persons in a confidential relation, the fact that the party seeking relief was aged and infirm and was induced to enter into the transaction by a contract which was not performed, still further strengthens the presumption of undue influence. (*Stuyvesant v. Wilcox,* 92 Mich. 228, 52 N. W. 617; *Tomlison v. Tomlison,* 103 Iowa, 740, 72 N. W. 664; *James v. Groff,* 157 Mo. 402, 57 S. W. 1081; 1 Page on Contracts, 218, and cases cited.)

S. E. Blaine and Good & Vaughan, for Respondent.

As to the question of undue influence, the burden of proof of undue influence rests upon the parties alleging the same. (*Mayers v. Kaiser,* 85 Wis. 382, 39 Am. St. 849, 55 N. W. 688, 21 L. R. A. 623; *Ginter v. Ginter,* 79 Kan. 721, 101 Pac. 634, 22 L. R. A., N. S., 1024; *Sellards v. Kirby,* 82 Kan. 291, 136 Am. St. 110, 20 Ann. Cas. 214, 108 Pac. 73, 28 L. R. A., N. S., 270; *Towson v. Moore,* 173 U. S. 17, 19 Sup. Ct. 332, 43 L. ed. 597; *Kelly v. Perrault,* 5 Ida. 225, 48 Pac. 45.)

"Influence gained by kindness and affection will not be regarded as 'undue,' in the absence of any proof of imposition or fraud being practiced by the grantee of a deed of gift." (*Turner v. Gumbert,* 19 Ida. 339, 114 Pac. 33; *Shaughnessy v. Hood,* 21 Ida. 709, 123 Pac. 641; *Goodwin v. Goodwin,* 59 Cal. 561; *Shea v. Murphy,* 164 Ill. 614, 56 Am. St. 215, 45 N. E. 1021.)

"The law does not inquire as to the propriety or import of the conveyance, but as to the grantor's capacity to make it, and whether it was made freely and with his assent." (Bump on Fraudulent Conveyances, 3d ed., p. 451; *Mallow v. Walker,* 115 Iowa, 238, 91 Am. St. 158.)

"Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration, and every person whose signature appears thereon, to have become a party thereto for value." (Sec. 3481, Rev. Codes; 8 Cyc. 224.)

"In the case of a bank check, it is presumed that the drawer was, at the time of giving the check, indebted in the amount named to the payee." (*Matter of Humfreville,* 6 App. Div.

535, 39 N. Y. Supp. 550; *Mills v. McMullen,* 4 App. Div. 27, 38 N. Y. Supp. 705; *Poucher v. Scott,* 33 Hun (N. Y.), 223.)

"There is a sufficient consideration for a promise if there is any benefit to the promisor or any loss or detriment to the promisee." (*Visalia Gas etc. Co. v. Sims,* 104 Cal. 326, 43 Am. St. 105, 37 Pac. 1042, 9 Cyc. 311, and cases cited.)

"The law will not inquire into the adequacy of the consideration. It is sufficient that there is actually a consideration; that such consideration is legal, and that it has some value. If there be any consideration, the court will not weigh the extent or value of it." (3 Am. & Eng. Ency. of Law, 831, and notes; 9 Cyc. 333, 365; *Sayward v. Houghton,* 119 Cal. 545, 51 Pac. 853, 52 Pac. 44; *Des Moines Valley R. Co. v. Graff,* 27 Iowa, 99, 1 Am. Rep. 256; *Goward v. Waters,* 98 Mass. 596; *Wilson v. Clonbrock Steam Boiler Co.,* 105 Fed. 846; *Johnson v. Staenglen,* 85 Fed. 603, 29 C. C. A. 369.)

AILSHIE, C. J.—This is an appeal from a verdict and judgment on a check issued by the appellant in favor of the respondent. The defense interposed is want of consideration and undue influence. The appellant had been living in respondent's home from time to time for several months and had been taken care of by respondent at times when he was very ill. He was an old man some seventy years of age, and apparently in easy financial circumstances and had no family or relatives. He appears to have taken a liking to the respondent, and, indeed, called her his adopted daughter, and introduced her on some occasions as his adopted daughter.

It could serve no good purpose for us to review and discuss the evidence in a written opinion. It is sufficient to say that there is evidence in the record sufficient to support the verdict and judgment.

It is quite clear that the respondent performed services for appellant in caring for him and taking him to her own home which, in all probability, she would not have performed except for the promises he repeatedly made her to compensate her either in buying her a farm or in giving her a money consideration.

The record fails to show any undue influence having been exercised by respondent over this old man. That he was exceedingly fond of her is conceded on all sides, and that she was kind to him and took every care of him while in her home is equally clear. It is well established, however, and this court has so held, that "influence gained by kindness and affection will not be regarded as 'undue' in the absence of any proof of imposition or fraud being practiced" by the one upon the other. (*Turner v. Gumbert,* 19 Ida. 339, 114 Pac. 33; *Shaughnessy v. Hood,* 21 Ida. 709, 123 Pac. 641. See, also, *Goodwin v. Goodwin,* 59 Cal. 560.)

The appellant has assigned a great many errors but they all revolve about the two propositions above mentioned. We fail to find any ruling or action of the court or conduct of the jury that would call for a reversal of the judgment.

This case is an apt illustration of the rule that an appellate court will not reverse the verdict of a jury where there is a conflict in the evidence and the jury have seen and heard the witnesses as they testified. In this case both the appellant and respondent testified in person before the jury; the jury had abundant opportunity to see them and observe their manner and demeanor and to judge of their veracity and truthfulness. If the appellant was laboring under senile dementia, or was so advanced in age as to be incapable of transacting his own business or protecting his own interests, this jury would undoubtedly have discovered that fact and rendered a verdict accordingly. On the contrary, many witnesses and some experts testified that he was entirely capable of taking care of his own business, and that he was laboring under no disability whatever. These matters have been passed upon by the verdict of the jury, and we are not inclined to disturb their finding.

The judgment should be *affirmed,* and it is so ordered, with costs in favor of respondent.

Stewart, J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court. The complaint alleges the delivery of the check involved in this case, for value, its indorsement and presentation by the plaintiff and the refusal of the bank on which it was drawn to pay it. The answer denies the execution and delivery of the check, denies any memory or remembrance of ever signing the check, and avers that if signed it was procured to be signed by fraud and undue influence on the part of the plaintiff exercised over the defendant at a time when he was seriously ill and near unto death, and without sufficient exercise of mind to know or understand the purport or meaning thereof; denies that any consideration whatever was ever given for said check; avers that as soon as the existence of such check was discovered, the defendant repudiated the same, and that if in his unbalanced state of mind he gave or delivered such check, it was as an incomplete gift, fraudulently and unlawfully obtained and without any consideration whatever, and was by the defendant upon his regaining consciousness of mind and his senses revoked and repudiated.

The defendant is a man seventy years of age or more, was greatly enfeebled in health, and on and prior to December 29, 1911, the evening said check was given, was seriously ill,— so ill that it was thought by all who knew his condition that he could not recover.

Plaintiff and defendant first met in October, 1910, at which time plaintiff rented a dwelling-house from the defendant. The defendant at the time plaintiff rented the dwelling contemplated going to California very soon, and remaining with plaintiff and family about a month, or until the latter part of November, 1910, during which time he lived with the family of plaintiff and paid his board. On his return from California the latter part of March, 1911, he lived and boarded with plaintiff and her family until the fore part of August, 1911, during which time he was to receive his board, etc., for the rental of the house. Early in August the defendant informed the plaintiff that he had sold the house in which they were living and the parties to whom he had sold it wanted

possession of it, and thereupon plaintiff and her family removed from said house and plaintiff and defendant met only once or twice until the following December. Some time in December, 1911, the defendant and plaintiff entered into an agreement whereby the plaintiff was to rent a house from defendant and pay one-half of the rent therefor, and defendant was to stand the other half, and also furnish one-half of the provisions, etc., for the board of the family consisting of plaintiff, her husband and two daughters, under which arrangement the plaintiff took possession of the house referred to on December 20th, 1911, and defendant had a room in said house and boarded with the family.

About 3 or 4 o'clock on the morning of December 28th the defendant was taken violently ill, and plaintiff and her husband went to his room to minister to and care for him, and found him very sick,—so sick that it was thought he would die. A priest was called to administer to him and his banker was called, who procured an attorney to draw his will, which was done about 4 o'clock on the afternoon of December 29th. About 9 o'clock of that evening, when the defendant was in a very exhausted condition from his violent sickness, and when no one was present but plaintiff and defendant, the plaintiff went into his room and procured him to sign said check. She wrote the check herself and procured his signature to it, for $3,000, and next morning, between 10 and 11 o'clock, took the check and presented it for collection, not to the bank in Boise City on which it was drawn, but to another bank. The bank on which it was drawn was nearer to her home than the bank to which she presented the check, still she went to another bank to deposit said check for collection. At the time said check for $3,000 was drawn or presented, the defendant had but $400 to his credit in that bank. In the forenoon of December 30th, 1911, as soon as the defendant discovered that said check had been issued, he demanded its return, which was refused by plaintiff, and he thereupon advised his banker not to pay it.

The record shows that the plaintiff is an intelligent and an experienced business woman, having been stenographer for

a Texas congressman for two years; that her husband had served as deputy sheriff for many years, and that they were both keen, shrewd business people. The evidence clearly shows that the check was cajoled out of this feeble-minded old man at a time when plaintiff had reason to believe, and no doubt did believe, that he would die in a very short time.

As to the consideration given for said check, the plaintiff testified as follows: "Q. What did you give or were you to give for this $3,000? A. Why, I was to make him a home. Q. You were to make him a home in the future? A. Or rather, he was to make his home with us and I would take care of him as I was doing, for the balance of his life. Q. That was why he gave you the check, is it? A. *That is all he gave it to me for.* Q. Yes. What, if any, past care had you given to him? A. Why, it wasn't a case of past at that time; it was present. There has never been any subject of past care until December. Q. What did he give you that $3,000 check for in December? A. Why, Mr. Hawley, I told you that when we came back from Huntington and failed to get a ranch there, that Mr. McGran said he would give me $3,000 to buy a ranch in New Mexico and that he was to make his home with us the balance of his life. Q. This $3,000 check, then, was given—he was to receive a home for the balance of his life with you? A. If he cared to make it. Q. Was there anything in writing which would have—whereby he would be protected? A. There was no writing on his side or mine."

It clearly appears from her whole testimony that there was no consideration whatever for said check. There was no obligation on the part of plaintiff to care for or support the defendant during his life, and the evidence shows that defendant had paid plaintiff for all care and board she had given him. If he ever promised to give her $3,000, it was *nudum pactum* and void for want of mutuality. It was not for past care that the plaintiff had given defendant that the check was given, as she positively testifies that it was not. The whole record shows the influence of a scheming, strong-minded, designing woman over a weak, senile old man, persisted in during a very

short acquaintanceship. The plaintiff's own testimony shows that she was to give nothing and did not obligate herself in any way for said $3,000 check, nor was she obligated or to be obligated to do or perform any services for the defendant in consideration of said check. The culmination of the scheme to secure this check from this weak-minded old man was at a time when it was believed by the defendant and his friends that he was in a dying condition, and then when she was alone with him, no one else present, she persuaded him to sign a check for $3,000 drawn by herself.

His last will had only been executed a few hours before said check was drawn, and he did not mention plaintiff in his will, she having signed said will as an attesting witness. If he owed her the $3,000, why did she not present the matter to his banker and the priest and the lawyer, who were there at the time the will was drawn, as any fair-minded person would have done? She waited until the still hours of the night, evidently preferring darkness rather than light, when she was alone with the weak-minded old man, then procured him to sign the check, and the next morning, at early banking hours, she hastened to the bank and deposited the check for collection, when the old man had only $400 cash in the bank with which to pay the check.

The plaintiff heard said last will of defendant read and signed it as a witness. This of itself is significant as indicating that she did not want it known that she was attempting to inveigle this feeble-minded and weak old man into giving her $3,000. It seems that she approved the making of said last will, disposing of all of defendant's property to others, and was willing to take a chance on procuring the old man to give her a check for $3,000 in the dead of night, when no one was present except herself and the defendant. The defendant attempted to testify on the trial in this case, and his testimony shows that he is a weak-minded old man.

Viewing this case from any standpoint, either that of fair and open dealing or of a transaction between people on equal grounds, trading at arm's length, or putting the case upon the footing of a fair and adequate or any consideration what-

ever, there is not only an entire failure on the part of plaintiff to sustain the issues tendered. by her complaint, but there is an affirmative showing in the testimony of the plaintiff herself which goes to impeach the fairness of the transaction, from any view that may be taken of it.

There is no substantial conflict in the evidence upon the point that there was no consideration given for said check, or that the defendant was under any moral or legal obligation to execute said check in favor of the plaintiff. It appears from the record that the defendant is worth about $17,000, and the jury by a three-fourths vote evidently concluded they would distribute it differently from what the old man had undertaken to distribute it by his last will. By the decision of my associates, the plaintiff is given $3,000 without any past consideration for it and without any future obligation on the part of plaintiff to care for defendant during the remainder of his life. The judgment ought to be reversed.

Petition for rehearing denied.